# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:22-cv-00259-MR

DAMETRI DALE,　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　）
　　　　　　　　　　　　　　　　　）　　**MEMORANDUM OF**
vs.　　　　　　　　　　　　　　　　）　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　）
NORTH CAROLINA DEPARTMENT　　　）
OF PUBLIC SAFETY, et al.,　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　Defendants.　　　　　　）
_____　）

**THIS MATTER** is before the Court on the Motions for Summary Judgment filed by the pro se Plaintiff [Doc. 37] and by the Defendants Eris Allen, Robert Campbell, and Brandon Orders [Doc. 52].

## I.　BACKGROUND

On November 18, 2022, the incarcerated Plaintiff Dametri Dale, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Foothills Correctional Institution.[1] The unverified Complaint [Doc. 1: Compl.] passed initial review against Defendants Eris Allen, Robert Campbell, and Brandon Orders for the use of excessive force/failure to intervene, and the Court exercised supplemental

_____

[1] The Plaintiff is presently incarcerated at the Scotland Correctional Institution.

jurisdiction over a state law assault claim against Defendant Campbell.[2] [Doc. 11: Order on Initial Review]. The Plaintiff seeks damages and a declaratory judgment. [Doc. 1 at 13: Compl.].

The Plaintiff filed a verified Motion for Summary Judgment [Doc. 37: P. MSJ] and supporting exhibits [Doc. 39: P. MSJ Ex.].[3] The Defendants filed a Motion for Summary Judgment [Doc. 52: D. MSJ] and exhibits opposing the Plaintiff's Motion for Summary Judgment and supporting their own Motion. [Doc. 53: D. MSJ Ex.]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the Defendants' summary judgment Motion and of the manner in which evidence could be submitted to the Court. [Doc. 56: Roseboro Order]. The Plaintiff filed a verified Response [Doc. 70: P. MSJ Resp.],[4] and the Defendants filed

_____

[2] An unverified Amended Complaint seeking to present additional claims did not pass initial review. [See Docs. 16: Am. Compl; Doc. 18: Order on Initial Rev. of Am. Compl.].

[3] To the extent that the Plaintiff attempts to assert claims that are new, or that did not pass initial review, these are not properly before the Court and they require no separate discussion. See generally Fed. R. Civ. P. 15(a) (discussing amendment); [see, e.g., Doc. 37 at 10-11 (alleging that the use of full restraints for behavior management and for mental health management violates prison policy); id. at 21 (arguing that "other staff not named in this suit are liable due to their failures to intervene…."]]. The Plaintiff's Motion is moot insofar as it raises evidentiary issues that have been resolved and which do not warrant the imposition of sanctions. [See Doc. 37 at 22-23 (arguing spoliation); see also Doc. 62: "Motion to Direct Defendants to File Video Evidence;" Doc. 68: Order].

[4] Claims raised in the Response that are not properly before the Court are dismissed without separate discussion. See Note 3, supra; [see, e.g., Doc. 70 at 4-5 (alleging that

2

a Reply [Doc. 71: D. MSJ Reply].  Having been fully briefed, these matters are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there

---

medical did not fully evaluate the Plaintiff on November 11, and ignored his complaints of neck and shoulder pain)].

is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole

4

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

On October 18, 2022, Correctional Officer Eris Allen was removing the Plaintiff's hand restraints after an escort. [Doc. 53-2: Allen Decl. at ¶ 3]. The Plaintiff yanked the hand restraints away, pulled Allen's hand into the food port, and broke Allen's cuff key. [Id.]. The Plaintiff pulled the hand restraints into his cell, began threatening staff, and refused to return the restraints, stating "Y'all bring ya ass in here and get them." [Id.]. Sergeant Orders responded to the cell and ordered the Plaintiff to place his hands through the trap to have the restraints removed. [Doc. 53-3: Orders Decl. at ¶ 3]. The

5

Plaintiff refused. [Id.]. The officer in charge ("OIC") responded to the cell and the restraints were removed without further incident. [Id.]. The Plaintiff refused to be photographed or to be seen by medical. [Id.]. Sergeant Orders determined that the Plaintiff should be charged with disciplinary infractions for assault on staff (A03), tampering with a locking device (B03), and using profane language (B24). [Id.]. The Plaintiff was convicted of all three infractions. [See Doc. 53-1: MSJ Ex at 6 (Offender Infractions); Doc. 53-1: MSJ Ex at 7 (Disciplinary Verdict Appeal/Review)].

On the evening of November 10, 2022, the Plaintiff was placed on self-injurious precaution ("SIP")[5] after he threatened to kill himself. [Doc. 37: P. MSJ at 4]. He covered his cell window and refused to submit to restraints. [Doc. 53-4: MSJ Ex at 4-12 (Incident Report)]. Sergeant Orders prepared a cell extraction team to prevent Plaintiff from harming himself. [Id.]. The OIC and Sergeant Orders repeatedly ordered the Plaintiff to submit to restraints; the Plaintiff refused. [Id.]. The Plaintiff was told that OC spray and an electronic shield may be used, and all conflict resolution attempts were exhausted. [Id.]. The food port was lowered and a short burst of OC pepper spray was directed into the cell. [Id.]. The Plaintiff continued to refuse

---

[5] Also referred to as self-injurious behavior ("SIB").

restraints, and the team entered the cell.  [Id.].  The Plaintiff threw his mattress and continued resisting so the shield operator applied electronic control for a total of 10 seconds.  [Id.].  The Plaintiff began complying and was restrained.  [Id.].

The Plaintiff was carried to a shower for decontamination.  [Doc. 53-3: MSJ Ex at 8 (Orders' Witness Statement); Doc. 37: P. MSJ at 4].   After showering, the Plaintiff was placed in an SIP camera cell in a smock and full restraints including a black box, waist chain, and connecting chain.  [Id.].  A nurse performed a use of force evaluation.  [Doc. 53-1: MSJ Ex at 40-43 (Nov. 10, 2022 Clinical Encounter)]. While the Plaintiff complained that he could not move his shoulder, no injuries were observed.  [Id.].

On November 11, 2022, the Plaintiff asked staff to enter the cell with a handheld camera and to remove his restraints.  [Doc. 37: P. MSJ at 4; Doc. 70: P. MSJ Resp. at 1-2].  Staff refused, which frustrated the Plaintiff, so the Plaintiff placed a restraint chain around his neck.  [Id.; Doc. 37: P. MSJ at 4]. Sergeant Orders and Lieutenant Campbell responded to the Plaintiff's cell and the Plaintiff removed the chain from around his neck.  [Doc. 37: P. MSJ at 5; Doc. 53-3: MSJ Ex at 9 (Orders' Witness Statement); Doc. 53-4: Campbell's Decl. at ¶ 4 (adopting Campbell's Witness Statement); Doc. 53-4: MSJ Ex at 13 (Campbell's Dec. 19, 2022 Witness Statement)].

7

Officers entered the cell and ordered Plaintiff to stand up so that the chain could be resecured. The Plaintiff ignored orders to stand up. Campbell grabbed Plaintiff's arm and pulled Plaintiff to a standing position. Officers unlocked the middle chain and began to reposition it with less slack, while Campbell held Plaintiff's arm. [Doc. 37: P. MSJ at 5; Doc. 53-4: MSJ Ex at 13; Doc. 53-3: MSJ Ex at 9]. The Plaintiff attempted to stand fully erect, "merely pulling against the chain and tens[ing] his body, not allowing the chain and locks to be secured." [Doc. 37: P. MSJ at 5, 12-13; Doc. 70: P. MSJ Resp. at 3]. Campbell and Orders considered this to be resisting. [Doc. 53-4: MSJ Ex at 13; Doc. 53-3: MSJ Ex at 9]. Campbell secured the Plaintiff's upper body with a "chokehold"[6] while the Plaintiff was bent over so that staff could resecure the chain. [Doc. 37: P. MSJ at 5; see Doc. 70: P. MSJ Resp. at 3 ("headlock")]. The Plaintiff stated, "I can't breathe" and Campbell replied, "if you can talk you can breathe." [Doc. 37: P. MSJ at 5, 15; Doc. 53-4: Campbell Decl. at ¶ 4]. Campbell ordered staff to exit the cell when the Plaintiff became compliant. [Doc. 53-4: Campbell Decl. at ¶ 4]. The Plaintiff was stepped down out of the restraints later that morning without further

---

[6] Campbell denies this and the video footage is ambiguous. [Doc. 53-4: Campbell Decl. at ¶ 4]. Therefore, for the purpose of evaluating the forecast of evidence the Court accepts the Plaintiff's version of events. See Simmons v. Whitaker, 106 F.4th 379, 386 (4th Cir. 2024) (a video must be viewed in the light most favorable to the nonmovant unless it blatantly contradicts the nonmovant's version).

8

incident. [Doc. 53-4: MSJ Ex at 4-12 (Incident Report); Doc. 37: P. MSJ at 6]. A use of force evaluation was performed 40 minutes after this incident. [Doc. 53-1 at 47-49]. The Plaintiff declined to answer the nurse's questions and no injuries were noted. [Id.].

The Plaintiff was "just another inmate" to Officer Allen, Sergeant Orders, and Lieutenant Campbell. [Doc. 53-2: Allen Decl. at ¶ 4; Doc. 53-3: Orders Decl. at ¶ 6; Doc. 53-4: Campbell Decl. at ¶ 5]. They did not have any feelings of ill-will towards the Plaintiff and never wanted to harm him; they were merely performing their duties. [Id.; id.; id.].

The Plaintiff completed all three levels of the Administrative Remedy Procedure ("ARP") for four grievances during the relevant time, only one of which addresses the incidents at issue, Grievance No. 3730-2022-EU3A-19787. [See Doc. 53-1: MSJ Ex at 121 (Inmate Grievance Resolution Board ("IGRB") Memo.); see id. at 123 (Grievance No. 3730-2022-EU3A-19787); see also id. at 130, 192, 196 (grievances addressing misplaced property and two incidents at Marion CI)]. The Plaintiff filed Grievance -19787 on November 12, 2022, complaining that Lieutenant Campbell had choked him on him on November 11. [Id. at 123]. The Step One and Step Two Responses state that the Plaintiff's allegations were being investigated in a separate proceeding and that no further action was needed. [Id. at 125, 127].

9

The Step Three Response issued on January 23, 2023 finds that staff used a minimal amount of force necessary to stop the Plaintiff's injurious behavior and to ensure compliance with orders, and the issue was considered resolved. [Id. at 122].

The Plaintiff addressed the October 18 incident in a disciplinary proceeding. [Doc. 70: P. MSJ Resp. at 6]. He also filed a grievance that was rejected because the ARP does not allow disciplinary grievances. [Id.].

Video footage from the November 10 and 11 incidents has been filed.[7] Handheld camera footage from November 10 depicts the following:[8]

| | |
|---|---|
| 00:00 | Plaintiff can be heard through the cell door stating that his rights are being violated at the prison. |
| 00:03: | Plaintiff is ordered to submit to handcuffs. |
| 01:22 | Plaintiff is asked whether he will submit; he does not respond. |
| 01:27 | He is asked "yes or no" regarding handcuffs; he does not respond. |
| 01:55 | Officers back away from the cell door. |

---

[7] The Defendants filed video footage in support of their Motion for Summary Judgment, and they filed additional footage on the Plaintiff's behalf. [See Doc. 55: Defendants' Motion to Manually File; Doc. 58: Order; Doc. 62: Plaintiff's "Motion to Direct…"; Doc. 68: Order].

[8] This video is not time stamped; progress times are noted for reference. [See 00000.MTS AVCHD Video].

| 03:06 | The camera operator walks to a hallway where an extraction team is preparing; each member states his name and role in the anticipated extraction. |
|---|---|
| 06:15 | The team walks to the Plaintiff's cell where Sergeant Orders tells Plaintiff to submit to cuffs. |
| 06:32 | Sergeant Orders tells Plaintiff that the shock shield may be used and it is demonstrated at the cell window. |
| 06:42 | Plaintiff can be seen through the cell window standing on the bunk with a towel over his head, holding his mattress. |
| 06:45 | Plaintiff is again ordered to submit to cuffs. |
| 07:30 | Orders tells Plaintiff that he will get OC spray if he does not submit to cuffs, and he asks Plaintiff whether he will submit. |
| 07:50 | OC spray is deployed through the food trap. |
| 08:04 | Plaintiff is again asked whether he submits. |
| 14:00 | Plaintiff is given a "last opportunity" to submit to cuffs. |
| 14:53 | The cell door is opened. |
| 15:03 | Officers restrain Plaintiff on the bunk with the shield; Plaintiff struggles and yells "ok, ok," "stop" and "I'm wet;" officers say, "quit resisting." |
| 16:16 | Plaintiff is restrained and escorted out of the cell, stating that the cuffs are tight and that he cannot walk. |
| 16:37 | Plaintiff lies on the floor; he is carried to a shower. |
| 35:08 | After showering, Plaintiff agrees to submit to cuffs. |
| 38:58 | Plaintiff is secured and escorted to a cell. |
| 42:45 | Plaintiff is placed in full restraints. |

11

46:58    Plaintiff asks about the connecting chain; Orders explains that the chain will be placed because Plaintiff is on SIB; Plaintiff is dressed in a smock and officers exit the cell.

Surveillance video footage from the Plaintiff's cell on November 11 depicts the following:[9]

4:54:55    Plaintiff is sitting on the toilet with a chain around his neck.

4:55:00    Plaintiff looks towards the cell door and removes the chain.

4:55:50    The cell door opens and officers enter.

4:56:07    Campbell and another officer lift the Plaintiff to standing.

4:56:29    Officers work on the restraint chain and bend Plaintiff's upper body forward; Plaintiff attempts to stand straight.

4:56:33    Campbell pulls Plaintiff's body forward and holds Plaintiff's head down with his forearm across Plaintiff's neck or head.

4:56:47    Plaintiff is placed on the toilet while he struggles.

4:56:56    Officers continue working on the chain; Campbell's arm remains on Plaintiff's head or neck.

4:57:03    Campbell releases Plaintiff and the officers exit the cell.

4:57:18    The cell door closes. No marks are visible on the Plaintiff and he does not appear to be in distress; he briefly stands, then sits back down while examining the chains.

---

[9] The surveillance video footage lacks audio. Surveillance footage from the housing unit depicts officers approaching and exiting the cell from two angles, but the incidents inside the cell are not visible, so the footage is not summarized in this section. [See C158 Seg E3A1 left view; C159 Seg E3A15 right view].

Handheld video footage from November 11 depicts the following:[10]

| | |
|---|---|
| 00:10 | An officer notes that Plaintiff is sitting on the toilet. |
| 00:18 | The cell door is opened. |
| 00:29 | Campbell orders Plaintiff to stand; Plaintiff says, "for what?" |
| 00:32 | Campbell again orders Plaintiff to stand; Plaintiff does not comply. |
| 00:36 | Campbell and another officer lift Plaintiff to standing while other officers work on the chain. |
| 00:55 | Officers bend Plaintiff's upper body forward and Plaintiff says, "it's too fucking tight;" Campbell says, "no it's not." |
| 1:01 | Campbell pushes Plaintiff's head forward and restrains his upper body. |
| 1:15 | Officers work on the restraint chain and Campbell orders Plaintiff to sit down twice; Plaintiff struggles. |
| 1:24 | Officers forcibly place Plaintiff on the toilet. |
| 1:29 | Plaintiff says, "I can't breathe;" Campbell says, "if you can talk you can breathe." |
| 1:31 | Campbell releases the Plaintiff. |
| 1:34 | Officers exit the cell and the door is closed. |

---

[10] The handheld video footage is not time stamped. [See 00559.MTS AVCHD Video]. Progress times are included for reference.

## IV.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment

#### 1.    Exhaustion

The PLRA requires a prisoner to exhaust his or her administrative remedies before filing a § 1983 action.  42 U.S.C. § 1997e(a).  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Id.  In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life.  534 U.S. 516, 532 (2002).  The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory."  Id. at 524 (citation omitted).  The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice.  Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  548 U.S. 81, 90 (2006) (quoting Pozo

14

v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).  Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion.  Id. at 216.  Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable.  Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

The North Carolina Department of Adult Corrections ("NCDAC")[11] has established a three-step procedure governing submission and review of inmate grievances in its ARP.  Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008).  Inmates are required to "properly" exhaust administrative remedies in accordance with ARP.  Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726.  An inmate does not exhaust his administrative remedies until he completes all three steps of the ARP.  Moore, 517 F.3d at 726.

The forecast of evidence demonstrates that the Plaintiff did not exhaust the ARP for the November 10 incident whatsoever.

---

[11] Previously known as the North Carolina Department of Public Safety ("NCDPS").

15

With regard to the October 18 incident, the Defendants have forecast evidence that the Plaintiff failed to complete the three-step ARP regarding his excessive force claim. That Plaintiff argues that the ARP was unavailable because a grievance addressing the related disciplinary proceeding was rejected. However, the dismissal of a grievance addressing disciplinary matters does not demonstrate that the ARP was unavailable for his excessive force claim. The Plaintiff's attempt to raise the issue in a prison disciplinary proceeding is unavailing because such is not "proper" exhaustion under the ARP. See Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726.

With regard to the November 11 incident, the forecast of evidence demonstrates that the Plaintiff did not address Defendant Orders' alleged failure to intervene whatsoever, and that the ARP regarding Defendant Campbell's alleged use of excessive force was completed *after* Plaintiff filed the instant lawsuit. Porter, 534 U.S. at 524. The Plaintiff argues that the ARP was not "available" to him with regards to the November 11 incident because a separate investigation of the use of force rendered the ARP a "dead end." [Doc. 70: P. MSJ Resp. at 6-7]. The forecast of evidence demonstrates that the Plaintiff's grievance was accepted and that he received a Response at each step. That the Responses acknowledged a separate use of force investigation did not excuse the Plaintiff from

16

completing the ARP, even though he apparently felt that such was futile. See generally Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (noting that the PLRA exhaustion requirement does not include a futility exception).

The Defendants have conclusively demonstrated a lack of exhaustion and the Plaintiff has failed to establish the existence of a genuine dispute of material fact from which a reasonable jury could conclude either that exhaustion occurred or that the ARP was unavailable. Accordingly, the Defendants' Motion for Summary Judgment will be granted for lack of exhaustion.[12]

### 2. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761

---

[12] While dismissal for failure to exhaust administrative remedies is ordinarily without prejudice. because the Plaintiff has also failed to establish the existence of a genuine dispute of material fact regarding his underlying claims as discussed infra, the dismissal will be with prejudice.

(4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. Furthermore, the Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

With regard to the October 18 and November 10 incidents, the forecast of evidence demonstrates that the Defendants used minimal and appropriate force in responding to the Plaintiff's self-injurious and resistant behavior, and that the Defendants lacked a subjectively culpable state of mind. The Plaintiff's disagreement with the Defendants' actions and his belief that the Defendants failed to adhere to prison policy are unavailing. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

With regard to the November 11 incident, the forecast of evidence construed in the light most favorable to the Plaintiff establishes that Defendant Campbell placed the Plaintiff in a headlock for 30 seconds. The forecast of evidence further demonstrates that this brief use of force was necessitated by the Plaintiff's admitted self-injurious behavior, repeated refusal to comply with orders, and physical resistance; that Campbell released the Plaintiff within three seconds of the Plaintiff stating that he could not breathe; that officers ceased using force altogether once Plaintiff was secured; and that the Plaintiff sustained no physical injuries. The Court concludes that no reasonable jury could find, under these circumstances,

19

that the force employed by officers on November 11 was excessive.  See, e.g., Allen v. City of Dunn, 708 F.Supp.3d 743, (E.D.N.C. Dec. 27, 2023) (police officers' use of a headlock while attempting to arrest a motorist was reasonable where the motorist started a verbal confrontation, physically assaulted an officer, and resisted arrest until he was subdued and handcuffed); Whiteside v. White, 1:16-cv-288-FDW, 2018 WL 893775 (W.D.N.C. Feb. 14, 2018) (granting summary judgment for officer who used a mandibular angle control hold to stop an inmate fight); Housley v. Holquist, 879 F.Supp.2d 472, 481 n.8 (D.Md. Aug. 30, 2011) (granting summary judgment for officers who used a chokehold to extract a woman from her residence for an emergency psychiatric evaluation where the force was *de minimis*, the hold lasted no more than a few seconds, and there were no lasting injuries).

Because the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact regarding the Defendants' use of excessive force, his failure to intervene claims likewise fail.  See Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 20 (4th Cir. 1996) (absent any underlying use of excessive force, there can be no bystander liability).

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' use of excessive force and

failure to intervene and, accordingly, Defendants' Motion for Summary Judgment will be granted.

### 3. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

As discussed *supra*, the Plaintiff has not presented a forecast of evidence that the Defendants violated his constitutional rights. It is not clearly established that the use of force, including a brief chokehold, to bring a self-injurious and physically resistant inmate into compliance with officers'

orders is excessive.  See, e.g., Allen v. City of Dunn, 708 F. Supp. 3d 743, 756 (E.D.N.C. 2023) (noting that "[n]o Fourth Circuit authority holds the use of a headlock on a resisting suspect unreasonable, and numerous cases from other courts hold to the contrary") (collecting cases).  As such, summary judgment for the Defendants would also be proper on this ground.

### 4.  North Carolina Assault and Battery

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims that were based on the same incidents as the § 1983 excessive force claim that passed initial review. [See Doc. 11: Order on Initial Review at 8].

As discussed *supra*, the Plaintiff's § 1983 excessive force claims have been dismissed.  The Plaintiff's North Carolina claims that are based on the same conduct likewise fail.  See, e.g., Njang v. Montgomery Cnty., Md., 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, 2016 WL 866327, at *10 (E.D.N.C. March 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state

law tort claims").  Accordingly, the Defendants' Motion for Summary Judgment is granted on the Plaintiff's North Carolina claims.

### B.     Plaintiff's Motion for Summary Judgment

The Plaintiff moves for summary judgment with respect to his excessive force and assault and battery claims.  [Doc. 37].  For the reasons articulated in the Court's analysis for the Defendants' Motion for Summary Judgment, the Plaintiff's Motion for Summary Judgment is denied.

## IV.     CONCLUSION

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment is denied, the Defendants' Motion for Summary Judgment is granted, and this matter is dismissed with prejudice.

### <u>ORDER</u>

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 52] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

2. The Plaintiff's Motion for Summary Judgment [Doc. 37] is **DENIED**.

The Clerk of Court is respectfully directed to enter a Judgment consistent with this Memorandum of Decision and Order contemporaneously herewith and to close this civil case.

**IT IS SO ORDERED.**

Signed: February 3, 2025

Martin Reidinger
Chief United States District Judge